## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:24-CV-00038-JHM**

**BRISON STEPHENSON**                                                   **PLAINTIFF**

**v.**

**PHILLIPS,** *et al.*                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court on a motion by Defendants Oldham County, Oldham County Detention Center ("OCDC") Lieutenant Brian Phillips, OCDC Sergeant Daniel Grau[1], OCDC Correctional Officer Kevin Knight, and OCDC Sergeant Jacob Collett[2] for summary judgment. [DN 47]. Defendants also filed a motion to strike Plaintiff's sur-reply. [DN 52]. In its discretion, the Court denies Defendants' motion to strike [DN 52] and considers the sur-reply in reviewing this motion for summary judgment.

### I. BACKGROUND

During the time pertinent to the claims set forth in the complaint, Plaintiff Brison Stephenson was incarcerated at OCDC as a pretrial detainee. Plaintiff sues Defendants alleging that on or about January 12, 2023, Grau, Knight, and Collett used excessive force when they tased or assisted in tasing Plaintiff in violation of the Fourteenth Amendment to the United States Constitution. [DN 1, DN 11]. Plaintiff asserts that he was tased even though neither the corrections officers were in danger, "nor were their threats of physical violence to himself or others or any displays of violent behavior by Plaintiff." [DN 11 at 5]. Plaintiff also claims that "[n]o facility rules were violated or observed prior

---

[1] Plaintiff originally referred to this Defendant as Defendant Daniels. [DN 1]. For this motion, the Court will refer to this Defendant as Grau.
[2] Plaintiff originally referred to this Defendant as Defendant Jacob. [DN 1]. For this motion, the Court will refer to this Defendant as Collett.

to the event." [*Id.*].

The record reflects that on January 12, 2023, Plaintiff attempted to e-mail his public defender; however, the kiosk in his cell was not working. [DN 47-3 at 2, Plaintiff Dep.]. Plaintiff informed Knight that the kiosk was not working, and Knight stated to "give [him] some time" and he would look into it by calling the company. [*Id.* at 3, 5]. Plaintiff testified that at a later point he heard an officer (whom he later found out was Grau) enter the foyer and go next door. [DN 47-3 at 3]. Plaintiff states that he knocked on the door to get his attention, and Grau ignored him. [*Id.*]. The incident report reflects that Plaintiff began to repeatedly mule kick the cell door. [DN 47-2 at 1]. Plaintiff does not contest that he kicked the cell door testifying that he "may have." [DN 47-3 at 16]. Plaintiff testified that when Grau ignored him, he commented that he "know[s] this d**k sucker hears me." [*Id.* at 3]. Plaintiff represents that Grau then slid the flap back and asked what Plaintiff had said to him. Plaintiff testified that he repeated what he had said at which time Grau shut the door flap and left the area. [*Id.*]. In the incident report, Grau stated that after he shut the door flap, Plaintiff continued to mule kick the door and curse at him through the doorway. [DN 47-2 at 1]. Plaintiff does not contest this information.

Plaintiff states that about ten minutes later, all Defendants returned to the cell. Grau instructed Plaintiff to "cuff up."[3] [DN 47-3 at 3]. Instead of complying with Grau's instruction by placing his hands behind his back, Plaintiff asked "for what." [*Id.* at 4]. Plaintiff testified that Grau then grabbed one arm and Knight[4] grabbed the other and attempted to wrestle him to the ground. [*Id.*]. At that

[3] In the incident report, Grau stated that he instructed Plaintiff to cuff up three times, and he refused every time. [DN 47-2 at 1]. After the third time, Grau represents that Collett, Phillips, and Deputy Jeff McGohon "went hands on to gain control" of Plaintiff and "Sergeant Collett then deployed his X2 Taser." [*Id.*]. The discrepancy regarding the number of times Grau instructed Plaintiff to cuff up—one verses three—does not raise a genuine issue of material fact.

[4] Defendants represent that Knight was not involved with the alleged excessive-force incident, but he was instead on the phone with the kiosk company. [DN 47-5 at 2]. The use of force report reflects that Phillips, not Knight, held Plaintiff's right arm and assisted in handcuffing him. [DN 47-6]. Similarly, this discrepancy does not raise a genuine issue of material fact.

time, Collett deployed a taser. [*Id.*]. After Plaintiff was tased, he was cuffed and placed in a single cell. [DN 47-3 at 10]. Plaintiff testified that it took Collett, Grau, and Knight to get him handcuffed. [*Id.* at 16]. Plaintiff further testified that from the time he was tased to the time he was placed in the handcuffs it took less than a minute. [*Id.* at 18]. As a result of this conduct, Plaintiff asserts that Grau, Knight, and Collett used excessive force when they tased or assisted in tasing Plaintiff in violation the Fourteenth Amendment to the United States Constitution.

Plaintiff further maintains that Phillips "supervised the other named defendants as the event unfolded and never intervened, thus engaging in excessive force" in violation of the Fourteenth Amendment as well. [DN 11 at 5]. Plaintiff contends that Oldham County is also responsible for failure to train the correctional officers regarding when it is appropriate to use a taser. [DN 1 at 5].

The Court conducted an initial review of the complaint and amended complaint pursuant to 28 U.S.C. § 1915A and allowed Fourteenth Amendment excessive-force claims to proceed against Grau, Knight, and Collett in their individual capacities; a Fourteenth Amendment failure-to-intervene claim to proceed against Phillips in his individual capacity; and a Fourteenth Amendment failure-to-train claim to proceed against Oldham County. [DN 15]. Defendants now move for summary judgment on Plaintiff's claims. [DN 47]. Plaintiff filed a response [DN 49], and Defendants filed a reply [DN 50]. Plaintiff also filed a sur-reply. [DN 51].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies

3

this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); 28 U.S.C. § 1746.

## III. DISCUSSION

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Excessive Force

Plaintiff alleges that Defendants Grau, Knight, and Collett applied excessive force against him in violation of the Fourteenth Amendment when they placed hands on him and deployed a taser. [DN 1, DN 11]. In *Kingsley v. Hendrickson,* 576 U.S. 389 (2015), the Supreme Court established "a two-prong inquiry for Fourteenth Amendment excessive-force claims." *Hale v. Boyle Cnty., Ky.*, 18 F.4th 845, 852 (6th Cir. 2021). First, "an official must purposefully, knowingly, or ('possibly') recklessly engage in the alleged physical contact with the detained person." *Id.* Second, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. Courts consider the following factors in assessing the "reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* A pretrial detainee may succeed by showing "the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398.

5

Plaintiff claims that there is a genuine dispute of material fact as to whether he actively resisted orders prior to his restraint and the use of a taser on him. The Court disagrees.

The Sixth Circuit has previously recognized that officers may apply limited force "in a good-faith effort to maintain or restore discipline." *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004). When a correctional officer is "faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification for use of a taser." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *see also Labadie v. Mitchell*, No. 17-1290, 2018 WL 4488268 (6th Cir. May 11, 2018). "When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Lewis*, 581 F.3d at 476 (internal quotation marks omitted); *see also Davis v. Abdeljaber*, No. 16-CV-10764, 2021 WL 1172597, at *3 (N.D. Ill. Mar. 29, 2021); *Alvarado v. Jackson*, No. 19-C-194, 2021 WL 3409260, at *11 (E.D. Wis. Aug. 4, 2021). "'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.'" *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)).

It is undisputed that prior to the alleged excessive force, Plaintiff engaged in a series of aggressive, threatening, and disruptive behaviors. Despite being informed that staff were trying to remedy the kiosk malfunction, Plaintiff beat on and mule-kicked the cell door multiple times and cursed at Grau. Once Defendants entered his cell, Plaintiff disobeyed at least one order, if not three orders, to cuff up. In fact, Plaintiff questioned the order to cuff up and refused to place his arms behind his back. Because of the resistance, the officers grabbed each of Plaintiff's arms in attempt to place his arms behind his back. Plaintiff continued to resist by refusing to move his arms from his

side. At that point, Collett deployed his taser one time.[5]  As such, Grau and Knight's restraint of Plaintiff's arms and Collett's use of a taser in this case was a reasonable attempt to gain control of Plaintiff by handcuffing him.  Such use of force was not excessive nor unreasonable under the circumstances.

Furthermore, the Court rejects Plaintiff's argument that Phillips's answer to Interrogatory No. 2 creates a genuine issue of material fact regarding whether the use of the taser by Collett was necessary or excessive under the facts of this case.  [DN 49-2 at 17].  Specifically, in his Second Set of Interrogatories, Plaintiff asked Phillips, "[i]n the incident report you didn't . . . use . . . a CEW/taser why?"  [*Id.*]  Phillips responded that "[m]y position during the subject incident and the nature of my involvement did not warrant the use of a taser."  [*Id.*].  Plaintiff argues that in this answer Phillips essentially concedes that Collett should not have deployed his taser in the incident in question.  However, considering Phillips's answers to the interrogatories along with the other discovery he produced, the Court disagrees.  Significantly, Phillips represents that during the incident in question, he grabbed Plaintiff's right arm after Plaintiff disobeyed the order to cuff up.  [DN 47-6].  Thus, because Phillips was holding Plaintiff's right arm during the incident, he would not have been in a position to deploy a taser or even permitted to deploy the taser pursuant to OCDC Policies and Procedures.  [*Id.*; DN 47-7 at 34].

For these reasons, the Court concludes that there is no genuine dispute of material fact as to whether Grau, Knight, and Collett used excessive force against Plaintiff in violation of his Fourteenth Amendment rights.  Accordingly, these Defendants are entitled to summary judgment on Plaintiff's excessive-force claims.

---

[5] There is no evidence that Plaintiff suffered any significant injury other than the shock of the taser.

### B. Failure to Intervene/Protect

Plaintiff alleges that Phillips violated the Fourteenth Amendment by failing to intervene during Grau, Knight, and Collett's alleged use of excessive force. [DN 11]. The Sixth Circuit has found "officers can be held liable for failure to protect a person from the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). An officer may be liable "(1) when the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.*

As Plaintiff fails to establish excessive force by Grau, Knight, and Collett in violation of the Fourteenth Amendment, his derivative claim alleging Phillips's failure to intervene or protect him during the use of force incident must necessarily fail. *See Blair v. Ky. State Penitentiary*, No. 5:21-CV-P75-JHM, 2023 WL 5281941, at *6 (W.D. Ky. Aug. 16, 2023) ("Having determined that no excessive force was used, Plaintiff's failure-to-intervene claim fails as a matter of law.").

Accordingly, Phillips is entitled to summary judgment on Plaintiff's failure-to-intervene claim as well.

### C. Oldham County

Plaintiff alleges that Oldham County failed to properly train Phillips, Grau, Knight, and Collett. "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal [or county] policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Here, as discussed above, Plaintiff failed to set forth sufficient facts to establish a violation of his constitutional rights. "No constitutional violation means no municipal [or county] liability." *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 367 (6th Cir. 2017) (citation omitted); *see also North v. Cuyahoga Cnty.*, 754 F. App'x 380, 389 (6th Cir. 2018) ("There must be a

constitutional violation for a § 1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his *Monell* claim fails").  Thus, Oldham County is entitled to summary judgment on Plaintiff's failure-to-train claim.

### IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [DN 47] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike Plaintiff's sur-reply [DN 52] is **DENIED**.

A Judgment will be entered consistent with this Memorandum Opinion and Order.

Date: June 27, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
       Counsel of Record
4414.014